UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BRUCE M. COOPER et al., )
      Plaintiffs )
)
v. ) Civil Case No. 3:12-10530-MGM
)
CHARTER COMMUNICATIONS )
ENTERTAINMENTS I, LLC & )
CHARTER COMMUNICATIONS, INC., )
      Defendants. )

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION
TO AMEND COMPLAINT
(Dkt. No. 93)

ROBERTSON, U.S.M.J.

This matter is before the court on the motion by plaintiffs Bruce M. Cooper, John W. Romito, Roy L. Baker, Whitney Taylor Thompson, Jeffrey O'Connor, John Evans, Noreen Nardi, Mauramy Hernandez, and Jennifer Colon, individually and on behalf of all other persons similarly situated, for leave to amend their complaint ("Plaintiffs' Motion"). The defendants, Charter Communications Entertainments I, LLC and its parent corporation Charter Communications, Inc. (collectively, "Defendant"), oppose Plaintiffs' Motion. The court heard argument from the parties on February 17, 2015, and for the reasons set forth below, GRANTS Plaintiffs' Motion.

I.     BACKGROUND

Although Plaintiffs' Motion was filed some thirty-three months after the initial complaint, this litigation remains in its early stages. A sub-set of the existing group of plaintiffs filed their initial complaint in Hampden County Superior Court. The plaintiffs alleged that Defendant had failed to pay refunds or offer credit for interruptions in cable, telephone and internet services as required by statute in Massachusetts and by Defendant's contracts with the

1

municipalities in which they provided services. *See* Mass. Gen. Laws, ch. 166A, § 5. They further alleged that this failure by Defendant was in violation of various contractual, statutory and common law duties.

The complaint was removed to this court on March 22, 2012 (Dkt. No. 1). Defendant filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) immediately thereafter (Dkt. No. 8). On April 12, 2012, plaintiffs filed a motion to remand the action to state court (Dkt. No. 12). On June 22, 2012, the Honorable Michael Ponsor denied plaintiffs' remand motion. On September 9, 2012, over Defendant's objection, Judge Ponsor allowed plaintiffs' motion for leave to file their second amended complaint (Dkt. No. 35), considered Defendant's motion to dismiss as it applied to the second amended complaint, and, on May 21, 2013, allowed Defendant's motion to dismiss the case in its entirety (Dkt. No. 44). Plaintiffs' appeal from the dismissal was successful: on July 23, 2014, the United States Court of Appeals for the First Circuit affirmed the district court's exercise of jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and vacated, in part, the granting of Defendant's motion to dismiss. *See Cooper v. Charter Commc'ns Entm'ts I, LLC*, 760 F.3d 103 (1st Cir. 2014). In summary, the First Circuit affirmed dismissal of plaintiffs' third-party beneficiary breach of contract claims and related claims based on the implied contractual duty of good faith and fair dealing. The court held, however, "that a failure by Charter to pay a credit in accord with its statutorily-imposed contractual obligation would likely violate Chapter 93A," *id.* at 111, and allowed plaintiffs' claims under Chapter 93A to stand. The court further held, in view of the allegations in the complaint, that even those plaintiffs who had received refunds from Charter were potentially entitled to declaratory relief concerning Defendant's obligations. *Id.* at 107.

In light of the First Circuit's ruling, plaintiffs moved for leave to file their third amended complaint, which motion was allowed without opposition (Dkt. Nos. 57, 65, 71). The third amended complaint was filed on October 3, 3014; Defendant's answer thereto was filed on October 22, 2014. Some two and a half years after the filing of the state court complaint, an initial scheduling conference in the case was held on October 24, 2014, at which time the court resolved disputes about, and adopted other provisions of the scheduling order proposed by the parties (Dkt. No. 85). Of note for purposes of this decision, the court's scheduling order provided that motions for leave to amend pleadings and add parties were to be filed by December 19, 2014. Plaintiffs filed the motion presently at issue on December 19, 2014.

The significant differences between the presently operative complaint and the proposed fourth amended complaint ("PFAC") are the following:

- The third amended complaint alleged that on or about October 29, 2011, a snow storm that hit Massachusetts caused extensive damage, including downed power, cable and drop lines, and that at least 95,000 of Defendant's customers lost power for twenty-four or more consecutive hours. Without power to its customers' homes and businesses, Defendant could not provide their customers with the cable television, internet and telephone services for which its customers had already paid (Dkt. No. 78, ¶¶ 20-24). Although Defendant knew or should have known that it had failed to provide the services for which its customers had paid, Defendant failed, in violation of Massachusetts law, to provide all of its customers with a credit, refund or rebate for the services for which the customers had paid (Dkt. No. 78, ¶¶ 26-33).
- Rather than focusing exclusively on the October 2011 snow storm, the PFAC defines the so-called "Relevant Period" as January 1, 2008 through the present (Dkt. No. 93-1 at 2),

3

and alleges that, in addition to the October 2011 snowstorm, other storms and weather events occurred during the Relevant Period, such as a tornado in Springfield, Massachusetts in June 2011 and Hurricane Irene in August 2011, which caused widespread power outages and corresponding losses in services to Defendant's customers for which those customers did not receive credits, refunds or rebates (Dkt. No. 93-1, ¶¶ 26-32).

- The PFAC also adds allegations, not asserted the third amended complaint, that Defendant failed to disclose, or failed adequately to disclose, its refund policy to customers, and had a refund policy inconsistent with Massachusetts law about which conflicting and confusing information was provided to customers (Dkt. No. 93-1, ¶¶ 43-45). The PFAC alleges that Defendant's misrepresentations included telling consumers they were not entitled to a credit or rebate for service interruption unless they asked for one; telling consumers that they were not entitled to a credit or rebate unless the service interruption was caused by Defendant; and telling consumers that they were not entitled to a rebate or credit unless Defendant knew or should have known about the service interruption (Dkt. No. 93-1, ¶ 46). According to the PFAC, Defendant's misrepresentations, its failure clearly to explain its refund policy, and its failure to comply with its refund policy violated regulations of the Massachusetts Attorney General (Dkt. No. 93-1, ¶ 47).

II. D<span style="font-variant:small-caps">iscussion</span>

     A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed. . . . The default rule mandates that leave to amend is to be "freely given when justice so requires" . . . unless the amendment "would be futile, or reward, *inter alia,* undue or intended delay." As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. . . . Once a scheduling order is in

> place [if leave to amend is sought after the cut-off date established in the order], the liberal default rule is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b).

*Steir v. Girl Scouts of the USA,* 383 F.3d 7, 11-12 (internal citations omitted).

"[T]he 'spirit of the rule' dictates a preference for decisions 'on the merits, not because of missteps by counsel in pleading.'" *J.S. McCarthy Co. v. Braus Diecutting & Converting*, 226 F.R.D. 14, 17 (D. Me. 2005) (quoting *Allendale Mut. Ins. Co. v. Rutherford*, 178 F.R.D. 1, 3 (D. Me. 1998) (quoting *Sweeney v. Keystone Provident Life Ins. Co.*, 578 F. Supp. 31, 34 (D. Mass. 1983)); *see also Torres-Alamo v. Puerto Rico*, 502 F.3d 20, 25-25 (1st Cir. 2007) (Rule 15(a) embodies liberal standard for judging motion for leave to file amended complaint). "In considering a motion for leave to amend . . . the trial court must first consider whether the proposed new claims are futile[.] . . . If the claims are not futile, then the trial court must consider whether, given the timing of the motion for leave to amend, such prejudice to the defendant would arise from granting the motion that the motion should be denied on that ground." *Smith v. Mitre Corp.*, 949 F. Supp. 943, 945 (D. Mass. 1997). "In determining whether the plaintiffs unduly delayed in filing their motion to amend, the focus . . . is on whether allowing the amendment would unfairly prejudice the defendants." *Bond Opportunity Fund II, LLC v. Heffernan*, 340 F. Supp. 2d 146, 155-156 (D.R.I. 2004); *Mitre Corp.*, 949 F. Supp. at 945. "Amendment of pleadings is largely a matter within the discretion of the district court." *Guest-Tek Interactive Entm't Inc. v. Pullen*, 731 F. Supp. 2d 80, 92 (D. Mass. 2010).

    A.  <u>Futility</u>

"If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." *Hatch v. Dept. for Children, Youth &*

*Their Families*, 274 F.3d 12, 19 (1st Cir. 2001); *see Adorno v. Crowley Towing & Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) ("In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)."). In that context, "[f]utility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996); *see also Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000) ("a proposed amendment is futile only if it could not withstand a 12(b)(6) motion to dismiss"). Thus, where the question of futility is raised in opposition to a motion for leave to amend a complaint, the proposed amended complaint must satisfy the Rule 12(b)(6) standard. Strictly speaking, Defendant has not asserted that plaintiffs' proposed amendments to the complaint would be futile. In its written opposition and at oral argument, however, it has (in summary fashion) raised several arguments that might fairly be characterized as futility arguments, including that, beginning at some unspecified point in the latter half of 2014, Defendant's contracts with their customers have included arbitration provisions that would require any claims to be adjudicated on an individual basis; and that, as the PFAC does not allege that any of the plaintiffs experienced a power outage on any occasion other than the October 2011 snowstorm, plaintiffs lack standing to assert claims based on any weather event other than that snowstorm (Dkt. No. 95 at 3).

As to the former contention, the court is unable to conclude that the arbitration provision would bar any claim asserted in the PFAC. According to Defendant's counsel, Defendant adopted the arbitration provision in the latter half of 2014. "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which it has not agreed to so submit." *Bruck v. Morgan Stanley Smith Barney, LLC*, 967 F. Supp. 2d 418, 421 (D. Mass.

6

2013) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)).

Here, the arbitration clause acknowledges that, as to existing customers, it is binding only as of its effective date.[1]  So far as appears from Defendant's representations, any arbitration agreement with its customers would cover a very short part of the proposed Relevant Period.  To the (limited) extent the arbitration clause might bar participation in this action by any potential class members, Defendant can invoke the arbitration provision in the contract as to any such individuals.  *See generally Joca-Roca Real Estate, LLC v. Brennan*, 772 F.3d 945 (1st Cir. 2014).  In the circumstances, Defendant's recent adoption of an arbitration provision in its standard agreement with its customers does not render futile claims asserted in the PFAC.

As to the latter contention – that plaintiffs lack Article III standing as to claims in the PFAC – in the court's view, Defendant "ha[s] conflated standing requirements with class certification analysis." *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012).  In *Glass Dimensions*, the plaintiff was the fiduciary for an ERISA retirement plan that had invested in three collective trust funds offered and managed by the defendants.  *See id.* at 172, 174.  The plaintiff alleged that the defendants acted in breach of their fiduciary duties to ERISA plans that had invested in the funds by paying themselves excessive compensation.  *See id.* at 173. Notwithstanding the fact that the plaintiff had invested in only three of the collective trusts at issue, the plaintiff sought to represent all ERISA retirement plans that had invested in any of 260 collective trust funds offered and managed by the defendants.  The defendants moved for summary judgment on the ground that the plaintiff did not have Article III standing to sue for injury caused by alleged mismanagement of the 257 collective trust funds in which the plaintiff had not invested.  *See id.* at 174.

---

[1] *See* https://www.charter.com/browse/content/residential-general-tc (accessed on April 17, 2015).

As noted in *Glass Dimensions*, in a class action lawsuit, as in any lawsuit, there are "three basic elements of constitutional standing: (1) the plaintiff must suffer an injury in fact; (2) that is fairly traceable to the defendant's conduct; and (3) redressable by the court." *Id.* In *Glass Dimensions*, the court concluded that the named plaintiffs asserted an injury common to each potential member of the class (a breach of fiduciary duty) and that was rooted in the same alleged misconduct by all of the defendants in managing all 260 of the collective trusts. Because the named plaintiff had an identity of interest with the proposed class in seeking redress for an injury traceable to misconduct by all of the named defendants, the plaintiff had Article III standing. *Id.*; *see also In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 267, 404-405 (D. Mass. 2013) (rejecting argument that end-payors complaining about cost of Nexium lacked Article III standing to assert claims on behalf of putative class members alleging overpayments for Nexium in states in which end-payors had not made payments).

Here, the named plaintiffs claim to have suffered an injury-in-fact perpetrated by Defendant that is identical to the injury suffered by all putative members of the class: a financial loss caused by the named Defendant's alleged failures to comply with Massachusetts law concerning credits, rebates, or refunds for service outages.[2] Because the named plaintiffs have established constitutional standing with respect to Defendant, the proposed amendment to the operative complaint would not be futile. *See Nexium*, 968 F. Supp. 2d at 404-405; *Glass Dimensions*, 285 F.R.D. at 174-175; *cf. Charter Commc'ns Entm'ts I, LLC*, 760 F.3d at 107-108 (as it is likely that New England weather will produce another storm causing outages, there is a

---

[2] To the extent some of the named plaintiffs have received refunds from Defendant, the First Circuit has ruled that those plaintiffs adequately pled a claim for declaratory relief. *See Cooper v. Charter Commc'ns Entm'ts I, LLC*, 760 F.3d 103, 107-108 (1st Cir. 2014).

live controversy between plaintiffs and Defendant about Defendant's duties to its subscribers that is "proper for judicial consideration").[3]

B. Undue Delay

Plaintiffs have not explained why they could not have asserted all claims arising during what they have defined in the PFAC as the Relevant Period from the outset. That 24-hour outages attributable to bad weather may have occurred in addition to those caused by the October 2011 snowstorm is not newly discovered information. *See Steir*, 383 F.3d at 14 (question of what plaintiff knew and when plaintiff knew it relevant to question of whether justice requires leave to amend complaint). Nonetheless, the most significant issues are judicial economy and whether, at this stage of the case, allowing leave to amend would unfairly prejudice Defendant. *See Mitre*, 949 F. Supp. at 945-946. This is not a case in which allowing leave to file an amended complaint would require re-opening discovery or postponing other scheduled events. *Contrast Somascan, Inc. v. Philips Sys. Nederland, B.V.*, 714 F.3d 62, 64-65 (1st Cir. 2013) (per

---

[3] During the hearing, but not in its written opposition to Plaintiffs' Motion, Defendant suggested that the PFAC would run afoul of Federal Rule of Civil Procedure 20(a)(1)(A) ("Rule 20(a)"), governing permissive joinder of claims by plaintiffs. This suggestion lacks merit. Rule 20(a) permits the joinder of plaintiffs when they assert a right to relief that arises from the "same transaction, occurrence, or series of transactions or occurrences" and when there is any question of law or fact that is common to all plaintiffs. Fed. R. Civ. P. 20(a)(1). "The requirements of Rule 20(a) are construed liberally in order to promote the broadest scope of action consistent with fairness to the parties." *Maldonado Cordero v. AT & T*, 190 F.R.D. 26, 28 (D.P.R. 1999) (citing *Matthews Metal Prods., Inc. v. RBM Precision Metal Prods., Inc.*, 186 F.R.D. 581, 583 (N.D. Cal. 1999)). "Absolute identity of all events is unnecessary." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). The plaintiffs' claims are based on a series of similar transactions – their service agreements with Defendant – and arise out of a single policy or plan that allegedly violated the law, that being Defendant's failure and refusal to offer credit or pay refunds in the event of a service outage of twenty-four hours or more caused by a significant weather event (Dkt. No. 93-1, ¶¶ 19-20, 28, 31). There are obviously questions of law common to the claims of all potential class members and the claims arise out of a series of very similar transactions. So far as appears from the parties' arguments, the requirements of Rule 20(a), liberally construed, are satisfied. *See, e.g.*, *Maldonado Cordero*, 190 F.R.D. at 28-29.

curiam) (denial of leave to amend complaint appropriate when motion was filed after discovery was complete and defendant had filed a motion for summary judgment). Plaintiffs filed their motion for leave to amend within the time permitted under the first scheduling order issued in the case. *See Delgado v. Galvin*, No. 12-cv-100872, 2014 WL 1004108, at *9 (D. Mass. March 14, 2014) (allowing leave to amend complaint where motion was filed within timeframe established by scheduling order). In February 2015, the court allowed the parties' joint motion to extend the discovery deadlines in the existing scheduling order. That motion was premised, at least in part, on the parties' expressed intention to postpone some discovery and avoid its attendant costs in view of a mediation session scheduled for March 25, 2015 (Dkt. No. 106).[4] Under the new deadlines established in February 2015, discovery will not close until July 10, 2015, with plaintiffs' class certification motion due on July 30, 2015, and dispositive motions to be filed by August 28, 2015. Allowing Plaintiffs' Motion would not require re-opening discovery, nor would it affect the deadlines for the filing of, and decisions on, class certification and dispositive motions. *See Delgado*, 2014 WL 1004108 at *9 (allowing leave to amend when case was not yet scheduled for trial, some discovery disputes remained, and the deadline for filing summary judgment motions had not passed); *Bond Opportunity Fund II, LLC v. Heffernan*, 340 F. Supp. 2d 146, 155-156 (D.R.I. 2004) (allowing leave to amend when no discovery closure date had been set and no dispositive motions filed); *contrast Steir*, 383 F.3d at 13 (denying motion for leave to amend when discovery would have to be re-opened, the hearing on a pending summary judgment motion rescheduled, and a trial date delayed).

      As to the claim that defense of this case will be more onerous if Plaintiffs' Motion is allowed, the primary legal issue in the PFAC is identical to that raised by the third amended

---

[4] The court was recently notified that the parties have postponed mediation to May 14, 2015.

complaint: whether Defendant's alleged failure to comply with its obligations under Massachusetts General Laws ch. 166A, § 5 to pay refunds or offer credit for interruptions in cable, telephone, and internet services was in violation of Chapter 93A. As to factual issues, the proposed amendment is limited to power outages of twenty-four hours or more attributable to weather events during the relevant period. The burden of identifying potentially relevant events will be borne primarily by plaintiffs (and by third party power companies whose records evidence potentially relevant outages). The proposed amendment will not unduly disrupt this case. *See Turnley v. Banc of Am. Inv. Servs., Inc.*, 576 F. Supp. 2d 204, 219-220 (D. Mass. 2008) (allowing leave to amend where defendant contended that amendment would be "unduly disruptive of existing litigation," but case was "still at a relatively preliminary stage").

Defendant cannot reasonably claim to be surprised or prejudiced by the allegations in ¶¶ 43-45 of the PFAC that Defendant had a refund policy that, in practice, failed to comply with Massachusetts law, and that was inadequately disclosed, or was misrepresented, to subscribers. This claim was asserted in the demand letter that preceded the filing of the initial complaint, and clarifies the basis of plaintiff's claims in response to the First Circuit's statement "that a failure by [Defendant] to pay a credit in accord with its statutorily-imposed contractual obligation [and to adequately disclose its policy to its customers] would likely violate Chapter 93A." *Charter Commc'ns Entm'ts I, LLC*, 760 F.3d at 111 (citing *Casavant v. Norwegian Cruise Line Ltd.*, 460 Mass. 500, 504 (2011)).

Finally, Defendant suggests that if plaintiffs wish to complain about a weather event other than the October 2011 snowstorm, they should do so by initiating a separate proceeding (Dkt. No. 95 at 2). To the contrary, "[a]dding the claims to the present case will promote efficiency and judicial economy." *Abbott Labs. v. Inverness Med. Tech.*, No. Civ. A. 98-10674-

GAO, 2002 WL 1906533, at *3 (D. Mass. Aug. 19, 2002); *see Mitre Corp.*, 949 F. Supp. at 953. With the case at a relatively preliminary stage, it is preferable to resolve all claims between the parties in a single proceeding.

    III.    <u>ORDER</u>

For the reasons stated, Plaintiffs' Motion to Amend Complaint (Dkt. No. 93) is GRANTED. Counsel using the CM/ECF system may now file the PFAC, noting in the caption that leave to file has been granted.

It is so ordered.                               /s/ Katherine A. Robertson
                                                                 KATHERINE A. ROBERTSON
                                                                 United States Magistrate Judge

DATED: April 28, 2015