UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BRUCE M. COOPER et al., | ) | |
|     Plaintiffs | ) | |
| | ) | |
| v. | ) | Case No. 3:12-cv-10530-MGM |
| | ) | |
| CHARTER COMMUNICATIONS, INC. | ) | |
| et al., | ) | |
|     Defendants | ) | |

ORDER ON PLAINTIFFS' MOTION TO COMPEL CONTINUATION
OF FIRST RULE 30(b)(6) DEPOSITION
(Dkt. No. 189)

ROBERTSON, M.J.

I.     INTRODUCTION

On December 10, 2015, the undersigned conducted a hearing on multiple discovery

motions – and oppositions thereto – filed by both sides in this litigation (Dkt. Nos. 159-164, 170-

171, 173, 176-191). At the hearing, the parties agreed that, as a next step in discovery, plaintiffs

would take five depositions that they had previously noticed, including a second Rule 30(b)(6)

deposition of Charter Communications, Inc. and Charter Communications Entertainment, LLC

(collectively, "Charter"). The court deferred ruling on certain discovery motions on the theory

that this further discovery would render moot some of the existing disputes between the parties.

Plaintiffs have now requested that the court rule on their pending motion to compel a

continuation of their *first* Rule 30(b)(6) deposition of Charter so that any continuation of this first

Rule 30(b)(6) deposition may take place in advance of the June 17, 2016 deadline set for class

certification discovery (Dkt. No. 225). This order, issued accordingly, grants in part and denies

in part plaintiffs' motion, and denies their request for attorney's fees and costs.

II.     RELEVANT BACKGROUND

Charter provides cable television, internet and telephone services to residential and business customers in Massachusetts and other states.  In this putative class action case, plaintiffs contend that, from 2008 to the present, Charter failed to provide its customers with a credit, refund, or rebate for periods when services already paid for by Charter customers were unavailable because of wide spread power outages of which Charter was aware, failed to disclose its refund policy clearly and conspicuously to its customers in violation of Massachusetts law, and maintained a refund policy that was in violation of state law (Dkt. No. 115).

Plaintiffs served Charter with a notice for a first Rule 30(b)(6) deposition on June 4, 2015, setting a June 30, 2015 deposition date.  By agreement between the parties, the deposition was continued to July 13, 2015.  On June 23, 2015, plaintiffs served a 30(b)(6) deposition re-notice with an attached schedule A listing sixteen (16) topics ("Schedule A") related primarily to Charter's credit and refund policies and its disclosures about those policies to its customers, and directing Charter to designate the person or persons most knowledgeable in the areas described in Schedule A to testify (Dkt. No. 191-2).

Thomas Cohan, Charter's Director of Government Affairs, was designated by Charter as its sole Rule 30(b)(6) deponent (Dkt. No. 210 at 3).  The deposition commenced at approximately 9:00 a.m. and continued until almost 5:30 p.m.  At that point, on the grounds that documents requested in discovery related to topics set out in Schedule A were produced late or had not been produced, that the witness was not adequately prepared, and that Charter's counsel had improperly instructed the witness not to answer questions about the interpretation of customer agreements that contained arbitration clauses and class action waivers, plaintiffs stated on the record their intention to "keep the deposition open" (Dkt. No. 191-3 at 54-55).  While acknowledging that the deponent had been asked some questions he was unable to answer and

had indicated that additional information might be available on some topics, Charter's counsel

disagreed that Mr. Cohan had been inadequately prepared (*id.*).[1]

  III. D<small>ISCUSSION</small>

  In their motion, plaintiffs identified four topics or areas as examples of Mr. Cohan's

alleged shortcomings as a Rule 30(b)(6) witness.  They seek an order from the court that compels

Charter to answer additional questions on any and all of the topics listed in Schedule A, instructs

Charter's counsel not to object or instruct the deponent not to answer except in compliance with

Federal Rule of Civil Procedure 39(c)(2), and compels Charter to pay plaintiffs' fees and costs

incurred in connection with the taking of such further Rule 30(b)(6) testimony (Dkt. No. 190 at

8).  Charter, for its part, contends that Mr. Cohan was adequately prepared, that further Rule

30(b)(6) deposition testimony responsive to Schedule A, if any, should be strictly limited and

should not include testimony about the interpretation of agreements subject to an arbitration

clause, and that sanctions are not warranted.

  1. Plaintiffs' request for an unlimited continuation of
    the Rule 30(b)(6) deposition and for fees and costs

  "In determining whether a corporate deponent has met its Rule 30(b)(6) obligation, courts

examine the degree and type of effort made by the organization to prepare the witness in light of

the deposition topics." *Fed. Ins. Co. v. Delta Mech. Contractors, LLC*, CA No. 11-048ML, 2013

WL 1343528, at *4 (D.R.I. Apr. 2, 2013).  Particularly when, as here, the list of topics is

relatively long and those topics are broadly defined, "[t]he fact that the designee cannot answer

every question posed at the deposition does not mean that the organization failed to satisfy its

---

[1] Plaintiffs subsequently served a notice for a second Rule 30(b)(6) deposition on Charter, identifying a set of topics entirely different from those in Schedule A.  On January 12, 2016, this court granted in part and denied in part Charter's Motion for a Protective Order on Plaintiffs' Second Rule 30(b)(6) Deposition Notice (Dkt. No. 211).

obligation to prepare the witness." *Int'l Bhd. of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, Civil Action No. 11-cv-02007-MSK-KLM, 2013 WL 627149, at \*6 (D. Colo. Feb. 19, 2013).

The court has reviewed the entire 295-page transcript of Mr. Cohan's testimony. It does not confirm Plaintiffs' characterization of his preparation or testimony. Mr. Cohan's role as Charter's Director of Government Relations and point person for Charter's response to a catastrophic October 2011 snowstorm, which is a major focus of plaintiffs' claims against Charter, made him a knowledgeable and appropriate Rule 30(b)(6) designee. As that designee, he did not rest on his personal knowledge. Rather, he took reasonable and substantive steps to prepare for the Rule 30(b)(6) deposition: he met with at least four Charter employees with relevant knowledge and spoke by telephone with at least three others, reviewed relevant documents, conferred with Charter's inside and outside counsel, and reviewed his prior affidavits and deposition testimony as well as another deponent's testimony. When, in the course of his preparation, he learned of the existence of documents he had not known existed, he took steps to obtain copies that Charter thereafter produced (Dkt. No. 191-3 at 5-6, 13). During the deposition, he answered most of the questions posed to him with knowledge and substance. When he did not know the answer, he acknowledged as much and often identified an individual likely to have relevant knowledge. This is far from a case in which the deponent's inability to answer every question posed by plaintiffs' counsel was "'tantamount to a complete failure' of the corporation to appear." *Berwind Prop. Grp., Inc. v. Envtl. Mgmt. Grp., Inc.*, 233 F.R.D. 62, 65 (D. Mass. 2005) (quoting *United States v. Mass. Indus. Fin. Agency*, 162 F.R.D. 410, 412 (D. Mass. 1995)); *contrast, e.g., Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33 (D. Mass. 2001) (company made no effort to educate Rule 30(b)(6) deponent and disclaimed any obligation to do so).

Because Charter produced a deponent who was adequately prepared to testify, plaintiffs are not entitled to a second day of unlimited testimony on the topics listed in Schedule A. Further, because Charter did not frustrate the fair examination of the deponent or otherwise significantly impede plaintiffs' examination, plaintiffs are not entitled to an award of expenses and reasonable attorney's fees. *See* Fed. R. Civ. P. 30(d)(2); *cf. Berwind*, 233 F.R.D. at 65 (declining to require party to produce another Rule 30(b)(6) deposition notice despite court's finding that preparation was inadequate); *Calzaturficio*, 201 F.R.D. at 41 (reserving issue of fees and costs despite finding that party failed properly to prepare Rule 30(b)(6) witness and counsel conducted himself improperly during deposition).

This leaves the question of whether Charter should be required to supplement Mr. Cohan's Rule 30(b)(6) testimony, and, if so, on what topics supplementation is required. *See Berwind*, 233 F.R.D. at 65. "[T]he party moving to compel discovery over an adversary's objection bears the burden of showing that the information he seeks is relevant[.]" *McEvoy v. Hillsborough County*, Civ. No. 09-cv-431-SM, 2011 WL 1813014, at *2 (D.N.H. May 5, 2011).[2] The difficulty faced by the court is that, having chosen to rest their motion to compel on an unwarranted broadside attack on Charter's Rule 30(b)(6) deponent, plaintiffs have, for the most part, failed to: (a) identify specific topics or areas in which Charter's testimony should be supplemented; and (b) show the relevance of additional information on the topics listed in

---

[2] Charter did not object to the topics listed in Schedule A, and, so far as may be determined from the record, it answered questions posed on the basis of all of the topics listed in Schedule A. Charter has now objected to providing further testimony on those topics. In view of Charter's substantial compliance with its obligation to produce a properly prepared Rule 30(b)(6) deponent, it is appropriate to place on plaintiffs the burden of demonstrating the relevance of further questioning on the sixteen topics identified in Schedule A. *See Fed. Ins. Co.*, 2013 WL 1343528, at **5 (ordering limited supplementation as to information that party claimed was most essential to its case).

Schedule A.[3]  Nonetheless, if fairly appears, based on plaintiffs' memorandum in support of their

motion and the deposition transcript, that Charter should provide additional Rule 30(b)(6)

testimony in certain areas or topics identified in Schedule A.  Those areas or topics are the

following:

- First, plaintiffs represented on the record at the outset and the conclusion of the

  July 13, 2015 Rule 30(b)(6) deposition that not all documents relevant to the

  topics listed in Schedule A were produced in advance of the deposition, a

  representation with which Charter did not disagree on the record (Dkt. No. 191-3

  at 5).  Plaintiffs' submissions do not list the missing documents, nor does

  Charter's submission seek to explain or excuse its failure to complete the

  production of relevant documents in advance of the first Rule 30(b)(6) deposition.

  Despite this unsatisfactory state of affairs, it is clear that plaintiffs were entitled to

  conduct a Rule 30(b)(6) deposition on the basis of a complete production of

  documents that they had requested in advance of the Rule 30(b)(6) deposition that

  were relevant to the listed topics.  To the extent, therefore, that documents

  relevant to topics in Schedule A were not produced in advance of the July 13,

  2015 deposition of Charter – and were not the subject of questioning at plaintiffs'

  *second* Rule 30(b)(6) deposition of Charter – plaintiffs are entitled to question

---

[3] It is not sufficient to attach a copy of the deposition transcript with portions highlighted where the deponent was unable to answer a question or questions posed by plaintiffs.  It is not the court's responsibility to sift through the transcript and attempt to determine the relevance of any gaps in the knowledge of Charter's Rule 30(b)(6) deponent.  Nor can plaintiffs meet their burden by pointing to questions the deponent was unable to answer without establishing the relevance of the missing information to the claims in the operative complaint.  *See McEvoy*, 2011 WL 1813014, at *2.

Charter about those documents within the limits of the topics identified in Schedule A.

- Second, Charter's deponent testified that the New England KMA customer credit policy ("KMA Credit Policy") was "designed specifically to clarify for person-to-person encounters, whether the technician in the home . . . or somebody at the front counter" (Dkt. No. 191-3 at 19).  In other words, the KMA Credit Policy was developed to instruct Charter employees and contractors about what should be said on Charter's behalf to customers inquiring about credits, refunds or rebates when those customers experienced service interruptions.  Having identified as topics in Schedule A the implementation and operation of Charter's credit, refund or rebate policies during the relevant period, plaintiffs were entitled to information about the distribution of the KMA Credit Policy to technicians and so-called employees at the front counter, and about training (or lack thereof) about how the policy was to be implemented in the course of the technicians' and other employees' person-to-person encounters in customer residences, businesses, and at the counters in Charter retail locations.

- Third, as to the refund guidelines available electronically in Charter's knowledge management system, plaintiffs are entitled to ask questions about revisions, if any, to the guidelines during the relevant period, including when any such revisions were made, as well as the content of any such revisions.

In the court's view, these are the only areas to which plaintiffs have established a right to pose further questions to Charter during a continuation of plaintiffs' first Rule 30(b)(6) deposition of Charter.  While the contents of Charter's annual notice to its customers is relevant

because the notice sets forth Charter's credit, refund and rebate policies and is distributed to customers, there is force to Charter's position that the documents speak for themselves. Plaintiffs have not established the relevance of testimony about the reasons why revisions were made and who approved the revisions.

As to questions seeking Charter's interpretation of agreements containing arbitration clauses, plaintiffs may be right that the better practice would have been for Charter to move for a protective order following counsel's instruction to the deponent not to answer those questions. *See Paparelli v. Prudential Ins. Co. of Am.*, 108 F.R.D. 272, 731 (D. Mass. 1985). Plaintiffs, however, have not established that the testimony they were seeking to elicit is relevant. The court has already ruled that plaintiffs were entitled, in the course of their *second* Rule 30(b)(6) deposition of Charter, to discover factual information underlying the affirmative defense that claims made by Plaintiffs or putative class members are or would be barred by individual arbitration provisions (Dkt. No. 211 at 5). *See Dunkin Donuts Franchised Rests. v. Agawam Donuts, Inc.*, Civil Action No. 07-11444-RWZ, 2008 WL 427290, at *1-2 (D. Mass. Feb. 13, 2008). "'[Q]uestion[s] of arbitrability' [are] to be decided by a court[.]" *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 476 (1st Cir. 2011) (citing *Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003)). It is well-established, however, that, when an agreement contains an arbitration provision and a party invokes the right to arbitration, questions of contract interpretation are to be resolved by an arbitrator, not by a court. *See, e.g., id.* at 476-77. Charter has consistently asserted its intention to invoke arbitration as to any customer agreements containing arbitration and waiver of class action provisions. As Charter points out, the instruction not to answer during plaintiffs' first Rule 30(b)(6) deposition of Charter was only given when Plaintiffs asked Mr. Cohan about the *meaning* of language in

agreements that contained arbitration clauses (Dkt. No. 191-3 at 41-42).  There were not

questions aimed at eliciting information relevant to the question of arbitrability.  Indeed, the

court has already ruled that Charter must answer such questions during plaintiffs' *second* Rule

30(b)(6) deposition of Charter.  Plaintiffs have not shown that information about Charter's

interpretation of an agreement that contains an arbitration clause is relevant in the case pending

before this court.

IV.    CONCLUSION

Plaintiff's Motion to Compel Continuation of Rule 30(b)(6) Deposition is granted in part

and denied in part on the terms set forth in this order.

IT IS SO ORDERED.

Dated:  April 11, 2016                               /s/ Katherine A. Robertson
                                                     KATHERINE A. ROBERTSON
                                                     U.S. MAGISTRATE JUDGE